# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jackie Lollis, | ) C/A No.: 9:12-1868-DCN-BM |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )   Report and Recommendation |
| Commissioner of the Social Security Administration, | ) |
| | ) |
| Defendants. | ) |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. §405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] alleging disability as of February 29, 2004 due to diabetes, chronic obstructive pulmonary disease (COPD), sleep apnea, arthritis, global hypokinesis,[2] high blood pressure, knee pain, and back pain. (ECF No. 12, p. 4). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which

---

[1]

Plaintiff did not pursue his SSI application. Thus, this appeal concerns only Plaintiff's claim for DIB. (R.pp. 14, 114-117).

[2]

Hypokinesia: abnormally decreased muscular movement. <u>See</u> http://merriam-wbster.com/medlineplus/Hypokinesia.



1

was held on April 23, 2010. (R.pp. 27). At the hearing Plaintiff amended his alleged onset date to April 12, 2008, as there were no medical records prior to that date. (R.p. 14, 65-66, 134). The ALJ thereafter denied Plaintiff's claim in a decision issued July 28, 2010. (R.pp. 11-23). After considering additional evidence submitted to it, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 2-6).

Plaintiff then filed this action in the United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. Plaintiff further asserts that the Appeals Counsel failed to adequately consider new evidence submitted to that body, and has therefore also moved for a Sentence Six remand.[3] The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## SCOPE OF REVIEW

Under 42 U.S.C. §405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial

---

[3]On July 19, 2013, the undersigned denied Plaintiff's separately filed Motion to Remand without prejudice, noting that the Court would consider whether a remand pursuant to Sentence Six is appropriate as part of the review of the case in chief. (ECF No. 22).



evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F. 2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgement for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

A review of the record shows that Plaintiff, who was 54 years old on his amended disability onset date, has a high school education with past relevant work experience at textile mills cleaning looms and at a plastic company as a mold injector. (R.pp. 32-34, 141, 145). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff has a severe combination of impairments[4] - hypertension, COPD, global hypokinesis, coronary

---

[4] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. §404.1521(b); Bowen v. Yuckert, 482 U.S. 137, 140-142



artery disease status post Endeavor stent to the left anterior descending artery, cardiomyopathy, and obstructive sleep apnea - he nevertheless retained the residual functional capacity (RFC) to perform a reduced range of medium work,[5] and was therefore not entitled to disability benefits.

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to give the opinion of Plaintiff's treating physician great weight, and by failing to find the Plaintiff credible. Plaintiff also asserts that the Appeals Counsel erred in its treatment of new evidence submitted to that body. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed.

### Medical Record and Decision

The record reflects that Plaintiff was seen in the emergency department of AnMed Health on April 12, 2008 (his amended disability onset date) after sustaining injuries in a motor vehicle accident. Ttrauma deformity was not obvious. However, after Plaintiff complained of chest pain upon palpatation and movement, he was diagnosed with a contusion of the chest wall and was discharged in good condition with prescriptions for acetaminophen and hydrocodone for pain. (R.pp. 231-232, 235).

On May 13, 2008, Plaintiff was seen in the radiology department of AnMed Health for complaints of hypertension and knee pain. Two views of his heart showed it to be essentially

---

(1987).

[5]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



unremarkable with only minimal calcification in the aortic arch, Plaintiff's lungs were clear, and there was no pleural abnormality. (R.p. 205). Four views were also taken of each knee, which revealed no evidence of fracture, dislocation, or other bony or joint abnormality. (R.pp. 206-207).

Plaintiff was seen at Anderson Heart, PC, on June 2, 2008, and a 2D echocardiography was performed to evaluate Plaintiff's chest pain, dyspnea,[6] and hypertension. Plaintiff's heart was again found to be essentially normal with the exception of a concentric left ventricular hypertrophy[7] with mild depression in systolic function. (R.p. 190). That same day Plaintiff also received an exercise nuclear report that showed he had normal rest/stress myocardial perfusion.[8] (R.p. 191). On June 10, 2008, Plaintiff was referred to Carolina Pulmonary for a sleep study, and as a result of this study Plaintiff was diagnosed with sleep apnea and hypersomnia.[9] Plaintiff was provided with sleep hygienic measures and weight reduction strategies, and was directed to have a CPAP titration study completed. (R.pp. 200, 219-220).

It is undisputed that Plaintiff's eligibility for DIB thereafter expired on June 30, 2008. (R.p. 14). <u>See</u> <u>also</u> Plaintiff's Response Memorandum, p. 3. Therefore, in order to obtain DIB, Plaintiff must establish that his impairments were of a disabling severity by that date. <u>Miller v.</u>

---

[6]

Dyspnea: difficult or labored respiration. <u>See</u> http://merriam-wbster.com/medlineplus/Dyspnea.

[7]

Hypertrophy: excessive development of an organ or part; an increase in bulk without multiplication of parts. <u>See</u> http://merriam-wbster.com/medlineplus/Hypertrophy.

[8]

Perfusion: the pumping of a fluid through an organ or tissue. <u>See</u> http://merriam-wbster.com/medlineplus/Perfusion.

[9]

Hypersomnia: sleep of excessive depth or duration. <u>See</u> http://merriam-wbster.com/medlineplus/Hypersomnia.



<u>Chater</u>, 99 F.3d 972, 975 (10th Cir. 1996)[A claimant must establish disability prior to the expiration of their insured status].

In August 2008, which was now *after* Plaintiff's eligibility of disability benefits had expired, Plaintiff complained of severe dyspenea, and also reported he had a dull left-sided chest pain "all the time." (R.p. 262). While it was noted that an echocardiogram had previously revealed mild depression and systolic function, a review of Plaintiff's systems and a physical examination were essentially normal. (R.pp. 263-264). However, Plaintiff complained of significant dyspnea, and on August 11, 2008, Plaintiff underwent a right heart catheterization, left ventriculogram, left and right coronary angiography, diagnostic IVUS, bilateral renal angiography, drug eluting stent intervention on mid LAD, and percutaneous[10] intervention. (R.p. 268-269). A discharge summary dated August 13, 2008 indicated that Plaintiff had coronary artery disease, status post Endeavor stent to the LAD; protect registry; normal ejection fraction; hypertension; dyslipidemia;[11] diabetes mellitus; obesity; family history of heart disease; cardiomyopathy by echocardiogram (ejection fraction 50% by heart cath.); severe dyspnea with dyspnea on exertion prompting heart cath.; and anemia (H&H 10.6 and 30.4, with normal MCV, and mild anemia noted as far back as March). Plaintiff was directed to continue nine (9) home medications, was prescribed Plavix and nitroglycerin sublingual, and was directed to take aspirin. (R.pp. 265-266).

In September 2008 Plaintiff was seen for a follow-up consultation by Corrinna M.

---

[10]

Percutaneous: effected or performed through the skin. <u>See</u> http://merriam-wbster.com/medlineplus/Percutaneous.

[11]

Dyslipidemia: a condition marked by abnormal concentrations of lipids or lipoproteins in the blood. <u>See</u> http://merriam-wbster.com/medlineplus/Dyslipidemia.



O'Bannon, Dr. Brent McLaurin's physician's assistant. Plaintiff stated he felt tired, had a cough, and was experiencing some shortness of breath, but denied any chest pain. A physical examination was performed which revealed Plaintiff was morbidly obese, and that he had sinus tachycardia.[12] Plaintiff was ordered to undergo a rest/stress nuclear testing and echocardiography in six (6) months, and was provided some diet and exercise recommendations. (R.p. 286). Also in September, Plaintiff underwent a psychiatric evaluation, and was determined to have no medically determinable impairment. (R.p. 291). In the evaluation report it was noted that Plaintiff picked up his grandchildren, helped with chores and supper, took his wife to work, helped with the pets, engaged in self-care, shopped, counted change, watched television, and dined out, among other activities. (R.p. 303).

In December 2008, a physical residual functional capacity assessment was completed by a state agency physician after a review of Plaintiff's medical records, who determined that Plaintiff could occasionally lift and/or carry fifty (50) pounds, and frequently lift and/or carry twenty-five (25) pounds. Plaintiff could walk and/or stand and sit, with normal breaks, for about 6 hours in an 8-hour workday, and had an unlimited ability to push or pull. These findings reflected, among other things, that Plaintiff's echocardiogram and stress test did not reveal any ischemia,[13] his apnea was controlled by a CPAP, x-rays of the knees were normal, and that Plaintiff was able to stand and walk without assistance. (R.p. 321). The assessment also concluded that Plaintiff did not

---

[12]

Sinus Tachycardia: abnormally rapid sinus rhythm at a rate greater than 100 beats per minute.
See http://merriam-wbster.com/medlineplus/Sinus Tachcardia.

[13]

Ischemia: deficient supply of blood to a body part that is due to obstruction of the inflow of arterial blood. See http://merriam-wbster.com/medlineplus/Ischemia.



have any postural, manipulative, visual, or communicative limitations, but that Plaintiff should avoid hazards and fumes, odors, dust, gases, and poor ventilation. (R.pp. 322-324). See <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

In January 2009, Plaintiff returned to his treating physician, Dr. Wadee, seeking assistance with anxiety and depression. (R.p. 340). Plaintiff was seen at the AnMed Health Emergency Department on March 26, 2009 complaining that he was light headed. He was diagnosed with benign paroxysmal positional vertigo ("BPPV") and prescribed Antivert. (R.p. 335). Plaintiff returned to Dr. Wadee in May and July of 2009 for check-ups, and to obtain refills for his prescriptions. At each visit Plaintiff did not have any complaints, and there is nothing in these medical records to indicate that Plaintiff had any disabling impairment. (R.pp. 330-31, 328). Also in July 2009, Plaintiff had spirometry[14] testing which revealed only minimal or mild obstructive lung defect, and a mild decrease in diffusing capacity. (R.p. 343).

Almost a year later, on April 12, 2010, Dr. Wadee completed a medical source statement regarding both Plaintiff's physical and mental work-related limitations. Dr. Wadee indicated that Plaintiff suffered from COPD, sleep apnea, diabetes, coronary artery disease post stenting, and high blood pressure. Plaintiff's symptoms were dyspnea, fatigue, hypoxia[15] and right knee pain. Additionally, Dr. Wadee opined that Plaintiff had reduced range of motion in his right

---

[14]

Spirometry: measurement by means of a spirometer of the air entering and leaving the lungs. See http://merriam-wbster.com/medlineplus/Spirometry.

[15]

Hypoxia: a deficiency of oxygen reaching the tissues of the body. See http://merriam-wbster.com/medlineplus/Hypoxia.



knee, joint warmth, reduced grip strength, impaired sleep, weight change, abnormal posture, and muscle spasms. (R.p. 345). Dr. Wadee believed these symptoms decreased Plaintiff's abilities, and indicated Plaintiff would "often" experience pain severe enough to interfere with attention and concentration. Additionally, Dr. Wadee felt that Plaintiff had a marked limitation in his ability to deal with work-related stress. He opined that Plaintiff could sit continuously for only one (1) hour before alternating postures. (R.p. 346). Dr. Wadee added that Plaintiff would need to walk about for approximately 15 minutes rather than stand in place after sitting that length of time. Furthermore, in Dr. Wadee's opinion, Plaintiff could only sit for a maximum of one (1) hour a day in an eight-hour day, and, after standing or walking about for the maximum continuous period of time he would need to lie down. According to Dr. Wadee, Plaintiff did not need to elevate his legs, but he then stated later that Plaintiff would need to elevate his legs to at least chest level. (R.p. 347). Dr. Wadee also indicated that Plaintiff would need to rest in addition to normal breaks to relieve fatigue for one hour total per day in an eight-hour workday. (R.p. 348). Furthermore, Plaintiff could not lift any weight, could not move his neck, and could only occasionally use both his hands for reaching, handling, and fingering. (R.p. 349-50). Plaintiff also needed to use a cane for walking and standing, Id. at 350, and would likely miss work approximately three (3) times a month. (R.p. 351). Dr. Wadee did not reference what period of time these restrictions and limitations covered. Id.

   As for Plaintiff's mental work-related limitations, Dr. Wadee believed that Plaintiff exhibited feelings of guilt and/or worthlessness, was hostile and irritable, and had "manic syndrome." (R.p. 352). Dr. Wadee also indicated that Plaintiff's ability to understand, remember and carry out instructions was affected by his impairments, as was his ability to deal with the stress of semi-skilled or skilled work. Additionally, Plaintiff's impairments would affect his ability to



respond appropriately to supervision and coworkers. At the same time, however, Dr. Wadee found that Plaintiff had either no, or at most mild, limitations in his ability to perform a wide range of activities. (R.p. 354). Dr. Wadee also evaluated Plaintiff's functional limitations, and found Plaintiff to be only slightly limited in his daily activities and in maintaining social functioning. He also would seldom have deficiencies in concentration, persistence, or pace, and had only "once or twice" had episodes of deterioration or decompensation. (R.p. 355). Again, no period of time was given for when these conditions existed. Id.

After a review and consideration of the medical record in this case as well as the testimony of Plaintiff and the Vocational Expert ("VE"), the ALJ determined that, notwithstanding Plaintiff's severe combination of impairments, through June 30, 2008 (when his eligibility for DIB expired ) Plaintiff could lift or carry up to 50 pounds occasionally and 25 pounds frequently and stand or walk for six (6) hours out of an eight-hour (8) workday, with the requirement that he avoid concentrated exposure to hazards, and avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. (R.pp. 16, 19). In making these findings, the ALJ noted that although Plaintiff alleges he became unable to work after a motor vehicle accident in April 2008, the medical records from the accident showed only minor injuries, and that while subsequent to the accident Plaintiff was diagnosed with various impairments, the medical records show these impairments were generally mild and controlled with medication, with Plaintiff having no complaints at recent visits to his treating physician. (R.p. 17). These findings are supported by substantial evidence in the record. See Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."].



### Treating Physician Opinion

In contesting these findings, Plaintiff first argues that the ALJ committed reversible error by failing to give controlling weight to the opinion of Dr. Wadee, Plaintiff's treating physician. Plaintiff particularly points to Dr. Wadee's Medical Source Statements of April 12, 2010, and complains the ALJ did not give legally sufficient reasons for assigning little weight to his opinion. However, the ALJ's decision reflects that he extensively reviewed the medical evidence and opinions in reaching his findings and conclusions, including those of Dr. Wadee, and set forth in some detail the reasons for his decision. (R.pp. 16-23).

For example, the ALJ noted that, after Plaintiff's 2008 car accident, Plaintiff complained of pain in his chest but a chest x-ray showed his heart and mediastinum were of normal size and configuration. Plaintiff's lungs were well aerated, there was no definite fracture, lytic or blastic lesion, and, upon listening to Plaintiff's heart, there was a regular rhythm with no murmurs present. (R.pp. 17, 232, 234). Dr. Wadee saw Plaintiff ten days later and diagnosed him with hypertension and a chest wall contusion. Treatment notes from May and June of 2008 reveal that, although Plaintiff complained of knee pain, x-rays revealed no evidence of fracture, dislocation, or other bony or joint abnormality. (R.pp. 17, 201, 208, 210, 216-217). The ALJ also discussed the results of the right and left heart catheritization performed by Dr. McLaurin, following which Plaintiff had normal left ventricular size and systolic function with an estimated ejection fraction of greater than 50% without obvious wall abnormalities. Plaintiff's left anterior descending artery was noted to have 50-70% stenosis which was reduced to 0% with the placement of a stent. Id. at 17-18. Thereafter, treatment notes from Dr. Wadee showed Plaintiff's COPD was stable, and that he had been diagnosed with cardiomyopathy and obstructive sleep apnea. Id. at 18.



The ALJ further noted that although Plaintiff's coronary artery disease, cardiomyopathy, and obstructive sleep apnea were not diagnosed until after Plaintiff's date last insured, the ALJ gave Plaintiff every benefit of the doubt in finding that these conditions were likely present prior to Plaintiff's date last insured. He also found these impairments to be severe in combination. (R.pp. 16, 18). However, because Plaintiff's diabetes was stable and controlled with a pill, and because the medical evidence showed no indication that Plaintiff's obesity functionally limited him in any way, these two diagnoses were found to be non-severe impairments. Id. As for Plaintiff's alleged mental impairments, the ALJ noted that although Plaintiff took Cymbalta, he had not received mental health treatment and had never been diagnosed with depression, and that none of Dr. Wadee's medical records from the relevant time period mention any mental impairment. See (R.pp. 197, 201, 208, 210, 216-217). Thus, Plaintiff's alleged depression was found to be non-medically determinable. Likewise, Plaintiff's complaints about arthritis were also medically non-determinable, because there was no diagnosis of arthritis in the medical record. Id.

The ALJ also noted that Dr. Wadee's reports from the Spring of 2008 only reference a complaint of knee pain, with no complaints of back pain, while after May 2008 Plaintiff had no complaints whatsoever. (R.pp. 197, 201, 208, 210, 315, 318, 328, 331, 338, 340). Plaintiff's May and July 2009 medical records, the most recent treatment notes in the record, showed that Plaintiff had zero complaints and only needed refills on his medications. Id at 20. Also, those notes revealed that Plaintiff's conditions were well controlled with medications. Moreover, there were no x-rays or cat scans of Plaintiff's back to corroborate his allegation of back pain, while Dr. Wadee's records showed only one visit where Plaintiff complained about his back, in April 2008. Office notes subsequent to that time, in May 2008 and July 2009, contain no record of Plaintiff reporting back



pain. Id.

　　　　As for the two medical source statements submitted by Dr. Wadee in April 2010, the ALJ found that these statements, which opined that Plaintiff was extremely limited, contradicted Dr. Wadee's own treatment records from the relevant time discussed hereinabove, which showed few to no complaints from Plaintiff.  See Burch v. Apfel, 9 Fed. Appx. 255, 258-260 (4th Cir. 2001)[ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with his own progress notes.].  Additionally, these findings were also inconsistent with Plaintiff's answers on his Function Report and at the hearing.  Plaintiff did not list any problems with his ability to handle stress or changes in routine on his Report, and at the hearing he stated he had no side effects from his medication. Id. at 21, 39, 162-163.

　　　　The ALJ also noted that, in contrast to Dr. Wadee's April 2010 opinions, the State agency medical consultant opined that Plaintiff was capable of performing medium work with the same environmental limitations the ALJ set forth when determining Plaintiff's RFC.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].  In further support of his findings, the ALJ noted that Dr. McLaurin's records showed that Plaintiff received a successful heart catheterization, while Dr. Wadee's records showed negative knee x-rays and no complaints of back pain for more than a year. Id. at 21.  Further, the State Agency psychological consultant found that Plaintiff had no medically determinable mental impairment, which was consistent with no diagnosis of depression in the record. (R.pp. 291-303).  This was also consistent with Plaintiff's failure to seek mental health treatment.  Id. See Craig v. Charter, 76 F.3d 585, 589-590 (4th Cir. 1996)[rejection of treating physician's opinion of disability justified where the treating physician's opinion was



inconsistent with substantial evidence of record].

The ALJ found that the RFC assigned in the decision was supported by the State agency medical and psychological consultants, Plaintiff's lack of complaints to Dr. Wadee (his primary care physician), Dr. Wadee's own treatment notes, and Dr. McLaurin's records showing Plaintiff's corrected stenosis with normal ejection fraction, and therefore gave little weight to Dr. Wadee's statements from April 2010. Id. After reviewing the foregoing, the undersigned finds no reversible error in the ALJ's consideration of this evidence. See Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Burch, 9 Fed. Appx. at 258-260 [ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with his own progress notes.]; Smith, 795 F.2d at 345 [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; Richardson v Perales, 402, U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)["When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted)].

Therefore, this claim is without merit. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; 20 C.F.R. § 404.1527(d)(1) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"].

### Credibility Determination

Plaintiff also argues that the ALJ erred by failing to properly evaluate Plaintiff's



credibility. The ALJ set forth Plaintiff's testimony, but found it was not credible to the extent it was inconsistent with the ALJ's RFC assessment. The ALJ noted that although Plaintiff was claiming disabling impairments, he had testified that his diabetes was controlled with a pill, (R.p. 20), and that he had no side effects from the Lortab. (R.pp. 18, 39). Plaintiff indicated he used a cane, although it had not been prescribed by a doctor, and that his COPD was his most serious problem, causing him to be short of breath and requiring him to sit down occasionally. (R.pp. 37-38). Nonetheless, Plaintiff testified he could take care of his own personal needs, helped his wife cook, and did occasional housework. He also indicated that he took his wife to work, drove his grandkids to and from school, and that during the day he would watch television. (R.pp. 18, 46-48, 303). In Plaintiff's Function Report dated July 31, 2008, Plaintiff stated that he got along well with authority figures, and that he did not have any unusual behaviors or fears. (R.pp. 158-165).

The ALJ further noted that, in contrast to the severity of his pain as testified to by Plaintiff at the hearing, Dr. Wadee's records reflect few complaints of back or knee pain, that x-rays and cat scans did not corroborate Plaintiff's allegations, and that while Plaintiff testified he had depression, the evidence showed this to be non-medically determinable. (R.p. 20). See also (R.pp. 197, 201, 206-208, 210, 216-217, 238, 263-264, 291, 303, 315, 318, 328, 330-331, 340). This evidence that Plaintiff had a functional capacity greater than claimed was properly considered by the ALJ in reaching his decision. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993)[ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints.]; see also Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)[ALJ is entitled to observe the Plaintiff, evaluate his demeanor, and consider how the Plaintiff's testimony fits with the rest of the



evidence].

When objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight; See SSR 96-7p, 1996 WL 374186, at *1 (1996); and after a review of the record and evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of the subjective testimony given by the Plaintiff. See Ables v. Astrue, No. 10-3203, 2012 WL 967355 at *11 (D.S.C. Mar. 21, 2012)["Factors in evaluation the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.", citing to SSR 96-7p.]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994)[In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including objective and subjective evidence]. The undersigned does not find that the ALJ conducted an improper credibility analysis in reaching this conclusion, or that the decision otherwise reflects a failure to properly consider the record and evidence in this case. Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that he has a disabling impairment]; Jolley v. Weinberger, 537 F. 2d 1179, 1181 (4th Cir. 1976)[finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Thomas v. Celebreeze, 331 F.2d 541, 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Anderson v. Barnhart, 344 F.3d 809, 815 [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints].



Plaintiff's credibility argument is therefore without merit. <u>Clarke v. Bowen</u>, 843 F.2d 271, 272-273 ["The substantial evidence standard presupposes ... a zone of choice from which the decision makers can go either way without interference by the Court"]. <u>See</u> <u>also</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1999)['No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"].

### Evidence Submitted to the Appeals Council.

Plaintiff had an MRI of the lumbar spine performed on August 13, 2010, sixteen (16) days after the ALJ issued his decision in Plaintiff's case, and almost two (2) years after his eligibility for DIB expired on June 30, 2008. This MRI showed there was apparent soft tissue enhancing masses identified, and enlargement of the fatty layer of the paraspinal[16] area posteriorly at approximately the L3 level. L1 and L2 showed mild disc bulging with facet[17] joint arthropathy[18], otherwise unremarkable. L2-L3 was normal. L3-L4 level showed mild facet joint arthropathy with minimal disc bulging to the left with no evidence of neural element compromise. L4-L5 showed posterior element hypertrophy with facet joint arthropathy. There was also diffuse disc bulging, worse to the left, and a potential for irritation or compromise of the descending nerve roots. L5-S1 showed diffuse disc bulge with focal herniation to the left which it was believed could compromise

---

[16]

Paraspinal: adjacent to the spinal column. <u>See</u> http://merriam-wbster.com/medlineplus/Paraspinal.

[17]Facet: a smooth flat or nearly flat circumscribed anatomical surface. <u>See</u> http://merriam-wbster.com/medlineplus/Facet.

[18]

Arthropathy: a disease of the joint. <u>See</u> http://merriam-wbster.com/medlineplus/Arthropathy.



the descending nerve root. Additionally, it was possible there could be some irritation or compromise to the existing nerve root on the left. There was no post contrast enhancement identified, and it was indicated that Plaintiff had only a "mild" effuse degenerative disc. (R.pp. 359-361).

Pursuant to 20 C.F.R. § 404.970(b), the Appeals Council should consider new and material additional evidence where it relates to the period on or before the date of the Administrative Law Judge hearing decision. The Appeals Council considered the reasons the Plaintiff disagreed with the decision of the ALJ, and reviewed the additional evidence submitted to them by the Plaintiff, but found that the additional information provided did not establish a basis for changing the decision of the ALJ. (R.pp. 2-3). Defendant asserts that no error is shown in the Appeals Council's treatment of this evidence, and the undersigned agrees.

Plaintiff has not established that the results of this MRI, performed almost two (2) years after his eligibility for DIB expired, show that he was in pain such that he could not work during the time Plaintiff was insured for disability purposes. Further, even assuming that these results *could* be deemed to be reflective of Plaintiff's disability period from 2008 (which the undersigned does not find has been shown), they do not establish that Plaintiff is disabled due to these findings either alone or in conjunction with Plaintiff's severe combination of impairments, and Plaintiff has made no showing to the contrary. Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that he has a disabling impairment]. The ALJ did not find, standing alone, that Plaintiff's failure to submit x-rays or cat scans meant that he was not disabled. Rather, the ALJ observed only that there was no evidence to support Plaintiff's claim of back pain. Even assuming an MRI had been taken during the relevant time period that showed the results of the August 2010



MRI (which are themselves overall mild in their findings), it would not change the ALJ's findings that Plaintiff did not consistently complain, during the time in question, that his back limited his ability to work, or that Dr. Wadee's records showed only one visit where Plaintiff complained of back pain - in April 2008. (R.p. 20). Defendant also notes that Plaintiff did not mention back or leg pain as impairments that limited his ability to perform work in his initial disability claim report. (R.p. 140)(ECF No. 13, pp. 16-17).

Hence, the submission of these MRI results do not change the ALJ's findings and decision, as they do not relate to the relevant time period and do not establish that Plaintiff suffered from disabling back pain. <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1186 ["[t]he mere fact that working may cause pain or discomfort does not mandate a finding of disability]; <u>Trenary v. Bowen</u>, 898 F.2d 1361, 1364 (8th Cir. 1990)[Courts should properly focus not on claimant's diagnosis, but on the claimant's actual functional limitations]; <u>see also Gross</u>, 785 F.2d at 1166 (4th Cir. 1986)[the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]. No error is shown in the Appeals Council's treatment of this evidence. <u>Cf</u>. <u>Bishop v. Astrue</u>, No. 10-2714, 2012 WL 961775 at * 4 (D.S.C. Mar. 20, 2012)[Finding that new evidence was not material where physician's opinion did not address whether or not Plaintiff was disabled during the relevant time period], quoting <u>Edwards v. Astrue</u>, No. 07-48, 2008 WL 474128 at * 9 (W.D. Feb. 20, 2008)["The [new records] do not relate back to the relevant time period as they were both done over 6 months after the ALJ rendered his decision."]; <u>see also</u> <u>Johnson v. Barnhart</u>, 434 F.3d 650, 655-656 (4th Cir. 2005)[Holding that the opinion of a treating physician rendered nine months after the claimant's date last insured was irrelevant].



**Motion to Remand/New Evidence**

On November 18, 2012, Dr. Wadee completed a new statement regarding his treatment of the Plaintiff, specifically addressing Plaintiff's impairments since July 2008. Dr. Wadee indicated that Plaintiff's heart condition improved, after the stents, resulting in an ejection fraction that was "fairly good." (ECF No. 17, p. 1). Nonetheless, due to the fact that Plaintiff was diagnosed with COPD, and was also found to be morbidly obese and deconditioned, Dr. Wadee opined that Plaintiff could not be expected to perform anything more than sedentary work on an eight (8) hour day, five (5) day per week basis. Additionally, Dr. Wadee opined that Plaintiff has a back condition that is sufficient to impinge on a nerve root; that Plaintiff is depressed, showing a loss of interest in activities; that Plaintiff exhibits psychomotor disturbances such as pacing, problems concentrating, agitation, and feelings of guilt; and that he would have problems with attention and concentration sufficient to frequently interrupt tasks at even sedentary work. Id.

Plaintiff seeks a remand of this case under Sentence Six for a consideration of this evidence, arguing that the ALJ discounted Dr. Wadee's opinions "based heavily on the paucity of detail in Dr. Wadee's treatment notes," and that "[t]he new report contains specific, detailed information which supports the opinions Dr. Wadee provided during the administrative process but which the ALJ discounted". (ECF No. 20, pp. 2, 5). Plaintiff also argues that "Dr. Wadee's new opinion specifically refers to the 2008 (sic) which makes it new and material." Id. at 3. Plaintiff also claims that Dr. Wadee addresses problems documented before July 2008, "which would include the period on or before June 3[0], 2008, [Plaintiff's] date last insured." Thus, Plaintiff believes the letter relates to the relevant time period. Id.

The Court may remand a case pursuant to Sentence Six of § 405(g) only upon a



showing that the new evidence submitted is material (i.e. if there is reasonable possibility that the new evidence would have changed the outcome), and there is good cause for failure to incorporate such evidence into the record in a prior proceeding.  Further, to even constitute "new" evidence, the material must not have been in existence or available to the claimant at the time of the administrative proceeding.  See Sullivan v. Finklestein, 496 U.S. 617, 626 (1990); Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991)(en banc).  Here, the evidence provided to the Court consists of a letter from Plaintiff's treating physician, Dr. Wadee, dated November 18, 2012.  This letter addresses the question of whether Plaintiff has any health problems "that have impaired him significantly, and persistently, since July of 2008." (ECF No. 17-1).  However, Dr. Wadee cites to medical evidence and records that were already before the ALJ at the time of the decision, and Defendant maintains that as this "new" evidence (Dr. Wadee's 2012 letter) is based on the same evidence which has already been considered and rejected by the ALJ in his decision, it is cumulative and not material.

Defendant also notes that both the 2010 (which were before the ALJ) and 2012 statements from Dr. Wadee contradict his own earlier treatment notes from the relevant time period, which revealed no complaints from the Plaintiff.  In fact, Defendant lists several instances where Plaintiff saw Dr. Wadee but had no physical complaints, and only required refills of his medication. Defendant also argues that Plaintiff has failed to show good cause for failing to submit this evidence until now, pointing out that if the information from Dr. Wadee relates to the time period under review for purposes of Plaintiff's insured status - a time period beginning in July 2008 - then Dr. Wadee waited five (5) years to reveal it. Defendant argues that the Plaintiff has failed to explain his failure to submit this evidence earlier along with his other medical records and opinions, since it could have been obtained at any point since 2008 and certainly prior to the Appeals Council's May



2012 denial of review. <u>Id</u>.

After reviewing the arguments of the parties, the undersigned is constrained to agree with the Defendant that the information provided by Dr. Wadee in 2012 is cumulative to the information already reviewed and rejected by the ALJ in significant part based on other, contradictory, evidence in the record. As such, this letter does not establish materiality regarding the ALJ's determination that Plaintiff did not have a disabling condition prior to the issuance of his decision. <u>See also</u> <u>Castellano v. Secretary of Health & Human Servs.</u>, 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(e) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"]. Further, Plaintiff has failed to show why this opinion could not have been obtained from Dr. Wadee at the time of the administrative hearing. <u>Timmons v. Commissioner of Social Sec.</u>, 522 Fed.Appx. 897, 902-903 (11th Cir. 2013). Therefore, Plaintiff's request for a sentence six remand should be denied.

## Conclusion

Substantial evidence is defined as "...evidence which a reasoning mind would accept as sufficient to support a particular conclusion." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the



conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

October 23, 2013
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

